UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAIME GARCIA, individually, and on behalf of all others similarly situated,

              Plaintiff,

    v.

PENSKE TRUCK LEASING CO., L.P.; and DOES 1 through 10, inclusive,

              Defendants.

No. 2:24-cv-01881 WBS JDP

MEMORANDUM AND ORDER RE: PLAINTIFF'S MOTION TO REMAND AND DEFENDANT'S MOTION TO DISMISS

----oo0oo----

Plaintiff Jaime Garcia ("Garcia" or "plaintiff") originally filed this putative class action against defendant Penske Truck Leasing Co., L.P. ("defendant" or "Penske") in Yolo County Superior Court, seeking monetary and equitable relief pursuant to the California Labor Code and the Unfair Competition Law ("UCL"). Plaintiff alleges that defendant denied him minimum wages, overtime compensation, meal periods, rest breaks, expense reimbursements, timely pay, and income statements.

1

1    The court now considers plaintiff's motion to remand

2 (Docket No. 10) and defendant's motion to dismiss (Docket No. 4).

3 I.   Factual Background

4    Plaintiff is a California resident who worked for

5 defendant in Yolo County "as a technician from approximately

6 September 2022 to July 2023."  (Notice of Removal (Docket No. 1

7 Ex. A) ("Compl.") ¶ 7.)  Defendant is a transportation services

8 company which is headquartered in Pennsylvania and incorporated

9 in Delaware.  (Notice of Removal (Docket No. 1) at 3-4.)

10    Garcia states that Penske violated various provisions

11 of the California Labor Code while it employed him.  For example,

12 Penske "typically scheduled [plaintiff] to work at least 5 days

13 in a workweek, and typically in excess of 8 hours in a single

14 day."  (Compl. ¶ 13.)  In addition, Garcia asserts that

15 "defendant[] failed to pay [him] for all hours worked (including

16 minimum wages and overtime wages)."  (Id. ¶ 14.)  Plaintiff also

17 alleges that Penske did not give him "uninterrupted meal periods"

18 or "uninterrupted rest periods" while working.  (Id.)  Finally,

19 Garcia contends that defendant did not provide him with a timely

20 final paycheck, reimbursements for business expenses it made him

21 undertake (such as buying tools and equipment), or itemized wage

22 statements.  (Id. ¶¶ 14-20.)

23 II.  Motion to Remand

24    A.   Standard

25    Pursuant to the Class Action Fairness Act ("CAFA"),

26 defendant removed the instant action from Yolo County Superior

27 Court.  (Notice of Removal at 2.)  CAFA gives federal district

28 courts original jurisdiction over class action lawsuits where the

1    class numbers at least 100, at least one plaintiff is diverse in

2    citizenship from any named defendant, and the aggregate amount-

3    in-controversy exceeds $5 million, exclusive of interest and

4    costs.   28 U.S.C. §§ 1332(d), 1441(a), 1446.

5            When a party moves for remand to state court and

6    challenges the non-movant's projected amount-in-controversy, both

7    parties must proffer evidence on "whether the amount-in-

8    controversy requirement has been satisfied."  Ibarra v. Manheim

9    Invs., Inc., 775 F.3d 1193, 1197-98 (9th Cir. 2015).   The burden

10   of proof falls on the removing party to make reasonable

11   assumptions and show that the amount-in-controversy exceeds $5

12   million by a preponderance of the evidence.  Jaurengui v.

13   Roadrunner Transp. Servs., Inc., 228 F.4th 989, 993-94 (9th Cir.

14   2022).   The Ninth Circuit has characterized the amount-in-

15   controversy requirement as an upper bound on "possible

16   liability."  Greene v. Harley-Davidson, Inc., 965 F.3d 767 (9th

17   Cir. 2020).

18        B.   Discussion

19            Plaintiff contests that the amount-in-controversy is

20   over $5 million, as required for removal under CAFA.   The court

21   disagrees and finds that defendant has shouldered its burden for

22   removal.   On behalf of himself and over 3,400 other people

23   employed by defendant, plaintiff seeks multiple declarations,

24   unpaid wages, statutory penalties, actual damages, a receivership

25   to preside over the disgorgement of defendant, punitive damages,

26   attorney's fees, and injunctive relief.   With respect to each of

27   the overtime and wage statement claims, defendant estimates that

28   plaintiff's desired remedies places the amount-in-controversy

1   north of $5 million.  (See Notice of Removal at 7-11.)  At any

2   rate, defendant argues that the remedies taken together across

3   all claims easily surpass the $5 million mark.

4          Plaintiff, in contrast, offers no competing facts

5   bearing on the amount-in-controversy.  Instead, plaintiff only

6   asserts that defendant's analysis is flawed without providing

7   contrary evidence.  The court concludes that it is more likely

8   than not that the CAFA's amount-in-controversy requirement is

9   met.

10          For the foregoing reason, the court will retain

11  jurisdiction over the matter under CAFA and deny Garcia's motion

12  to remand.

13  III. Motion to Dismiss

14       A.   Standard

15          Federal Rule of Civil Procedure 12(b)(6) allows the

16  court to dismiss a claim in a complaint when it fails to state a

17  claim upon which relief can be granted.  Fed. R. Civ. P.

18  12(b)(6).  "A Rule 12(b)(6) motion tests the legal sufficiency of

19  a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).

20  In deciding such a motion, the court accepts all material

21  allegations of the complaint and draws all reasonable inferences

22  in favor of the plaintiffs from them.  Id.

23          Dismissal is proper where a complaint fails to allege

24  "sufficient facts . . . to support a cognizable legal theory."

25  Id.  As such, the plaintiff must state "a claim to relief that is

26  plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S.

27  544, 570 (2007).  "A claim has facial plausibility when the

28  plaintiff pleads factual content that allows the court to draw

4

1   the reasonable inference that the defendant is liable for the

2   misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678-79

3   (2009). "Threadbare recitals of the elements of a cause of

4   action, supported by mere conclusory statements, do not suffice."

5   Id. Although "legal conclusions can provide the framework of a

6   complaint, they must be supported by factual allegations." Id.

7          B.   Discussion

8          The Ninth Circuit has held that a plaintiff seeking

9   redress for violation of minimum or overtime wage laws must

10  specify at least one workweek by date where the employer

11  underpaid him or her. See Landers v. Quality Commc'ns, Inc., 771

12  F.3d 638, 644-45 (9th Cir. 2014), amended, (Jan. 26, 2015). The

13  same applies to a claim seeking minimum wages. Id. at 645 &

14  n.2.[1]

15         In his first and second claims, Garcia alleges that

16  Penske failed to pay him minimum wages and overtime compensation.

17  (Compl. ¶¶ 15, 32, 43-44.) California law requires that an

18  employer pay an employee at least minimum wage for the first

19  eight hours of his or her workday and then 150% of that hourly

20  

21         [1]   In Landers, the Ninth Circuit affirmed the dismissal of
    a complaint alleging violations of the Fair Labor Standards Act,
22  29 U.S.C. §§ 206(a)(1), 207(a)(1), 211(c).    Following the
    decision, district courts have applied its holding to claims
23  arising under parallel provisions in the California Labor Code.
    See, e.g., Ritenour v. Carrington Mortg. Servs. LLC, 228 F. Supp.
24  3d 1025, 1033-34 (C.D. Cal. 2017); Haralson v. United Airlines,
    Inc., 224 F. Supp. 3d 928, 942-43 (N.D. Cal. 2016); Shann v.
25  Durham Sch. Servs., L.P., 182 F. Supp. 3d 1044, 1048-49 (C.D.
    Cal. 2016) ("The pleading standards set forth in Landers apply
26  equally to plaintiffs' state overtime, minimum wage, meal period,
    and rest break allegations." (capitalization altered)); Tan v.
27  GrubHub, Inc., 171 F. Supp. 3d 998, 1005-07 & n.3 (N.D. Cal.
    2016).
28

1    rate for anytime worked afterwards.  See Cal. Lab. Code §§ 510,

2    1194, 1197.

3           Plaintiff argues that the defendant "required [him] to

4    work off the clock[] and uncompensated" by undertaking tasks such

5    as cleaning and preparing trucks during his free time.  (Compl.

6    ¶ 15.)  However, Garcia does not meet the threshold of showing

7    the court that his first and second claims are plausible.

8    Plaintiff does not specify any specific period of time where

9    Penske neglected to pay him his due.  See Ritenour, 228 F. Supp.

10   3d at 1033-34.  Such defects are fatal to plaintiff's first and

11   second claims, which do not state sufficient facts to survive

12   dismissal.

13          With respect to his third and fourth claims, Garcia

14   avers that Penske neglected to provide him with sufficient meal

15   periods and rest breaks.  (Compl. ¶¶ 16-17, 51, 55.)  California

16   law prohibits an employer from asking its employee to work

17   "during a meal or rest or recovery period mandated pursuant to an

18   applicable statute."  Cal. Lab. Code § 226.7(b).

19          Plaintiff states that defendant made him work when he

20   was supposed to be taking a meal or rest break.  (Compl. ¶¶ 16-

21   17, 51, 55.)  On either claim, Garcia does not go farther than

22   asserting that Penske denied him meal or rest breaks.  Plaintiff

23   does not even specify a single workweek where that occurred.  He

24   may not proceed to discovery on the third and fourth claims

25   without details in that vein.  See Shann, 182 F. Supp. 3d 1044 at

26   1048-49.  Accordingly, Garcia does not state a claim upon which

27   relief may be granted regarding meal periods or rest breaks.

28          Regarding his fifth claim, plaintiff claims that

                                    6

1 defendant omitted to reimburse him for necessary business

2 expenses he incurred in the course of work.  (Compl. ¶¶ 18, 58.)

3 California law obligates "[a]n employer [to] indemnify his or her

4 employee for all necessary expenditures or losses incurred by the

5 employee in direct consequence of the discharge of his or her

6 duties."  Cal. Lab. Code § 2802(a).

7            In particular, Penske "required [Garcia] to purchase

8 masks, tools, and equipment (such as basic tools, pliers, clamps,

9 cocking guns, drills, and other tools)."  (Compl. ¶ 18.)

10 Plaintiff adds that Penske "required [him] to use [his] personal

11 cellular telephones for work purposes, without reimbursement."

12 (Id.)

13            Defendant contends that plaintiff must provide even

14 more facts, such as whether Penske would in fact reimburse the

15 expenses Garcia lists, to cross the threshold of plausibility.

16 See Ritenour, 228 F. Supp. 3d at 1033-34 (dismissing claim for

17 failure to reimburse business expenses due to plaintiff not

18 specifying when plaintiff incurred such costs).

19            The issue with Penske's suggestion is that it would

20 require bloating the Complaint with minutia.  In contrast to the

21 first four claims, Garcia provides sufficient detail here as

22 opposed to just reciting the statutory language.  See Shann, 182

23 F. Supp. 3d at 1005-06.  Accordingly, Garcia states a plausible

24 claim upon which relief may be granted on this claim.

25            In his sixth claim, Garcia alleges that Penske

26 "willfully failed and refused to timely pay [him]" following the

27 end of his employment with the company.  (Compl. ¶ 19.)

28 California law requires that employers give an employee his or

1    her last paycheck within 72 hours after the end of the working

2    relationship or face fines.  See Cal. Lab. Code §§ 201-03.

3             In that vein, Plaintiff explains that he stopped

4    working for defendant in July 2023, after which he did not

5    receive his final paycheck in a timely manner.  (Compl. ¶¶ 7, 14,

6    19.)  With that detail and the other allegations in the

7    complaint, Garcia pleads sufficient facts to survive Penske's

8    motion to dismiss on his sixth claim.

9             Plaintiff's seventh claim is that defendant failed to

10   provide him with accurate itemized wage statements.  (Id. ¶¶ 15,

11   20, 70.)  California law mandates that an employer "furnish to

12   their employee . . . an accurate itemized statement" of wages

13   earned.  Cal. Lab. Code § 226(a).  Only "a knowing and

14   intentional failure by an employer to [do so]" violates the

15   statute.  Id.(e)(1).

16            Here, Garcia alleges that Penske neglected to give him

17   itemized wage statements with the requisite intent.  See Fed. R.

18   Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of

19   a person's mind may be alleged generally.").  In particular, he

20   states that "defendant[] ha[s] intentionally and willfully failed

21   to provide [its] employees with complete and accurate wage

22   statements."  (Compl. ¶ 70 (capitalization altered).)  Plaintiff

23   also provides exact dates where defendant did not provide him

24   with sufficient information regarding his pay.  See Varsam v.

25   Lab'y Corp. of Am., 120 F. Supp. 3d 1173, 1180-81 (S.D. Cal.

26   2015).  Plaintiff's seventh claim states a plausible claim upon

27   which relief may be granted.

28            Garcia's eighth claim seeks relief under the UCL, which

1 prohibits any unlawful, unfair, or fraudulent business act or

2 practice.  (Compl. ¶¶ 76-94 (citing Cal. Bus. & Prof. Code

3 §§ 17200-01).)  In other words, a claim arising under the UCL may

4 allege that a business act or practice is unlawful, unfair,

5 and/or fraudulent.  Berryman v. Merit Prop. Mgmt., Inc., 152

6 Cal. App. 4th 1544, 1553-54 (4th Dist. 2007).  To show that a

7 business act or practice is unlawful, Garcia must show "a

8 violation of another law [a]s a predicate" for the claim.  Id. at

9 1554.

10        Because plaintiff pleads sufficient facts in the

11 Complaint to survive Penske's motion to dismiss on the fifth,

12 sixth, and seventh claims, his eighth claim under the "unlawful"

13 prong of the UCL may utilize the violations alleged in those

14 three claims as predicates.  See id. at 1553-54.  To the extent

15 it does so, Garcia's eighth claim states a claim upon which

16 relief may be granted.

17        Penske concludes by moving to dismiss Garcia's class

18 claims.  (Def.'s Mot. (Docket No. 4) at 21-24 (citing Fed. R.

19 Civ. P. 23).)  In its current posture, the court declines to

20 address arguments regarding class certification.  See Varsam, 120

21 F. Supp. 3d at 1184 ("It is more appropriate for such arguments

22 to be presented at the class certification stage of the

23 litigation.").

24        For all the foregoing reasons, the court will dismiss

25 only the first, second, third, and fourth claims against

26 defendant.

27    C.   Leave to Amend

28        Federal Rule of Civil Procedure 15(a)(2) directs the

9

1    court to "freely give leave [to amend a complaint] when justice

2    so requires."  Fed. R. Civ. P. 15(a)(2).  "[T]his policy is to be

3    applied with extreme liberality."  Herring Networks, Inc. v.

4    Maddow, 8 F.4th 1148, 1160-61 (9th Cir. 2021).  Accordingly, the

5    court will give plaintiff leave to amend his complaint against

6    Penske.

7              IT IS THEREFORE ORDERED that plaintiff's motion to

8    remand the case to state court (Docket No. 10) be, and the same

9    herby is, DENIED;

10             IT IS FURTHER ORDERED that defendant's motion to

11   dismiss plaintiff's first, second, third, and fourth claims

12   against it (Docket No. 4), be, and the same hereby is, GRANTED;

13             AND IT IS FURTHER ORDERED that defendant's motion to

14   dismiss plaintiff's fifth, sixth, seventh, and eighth claims

15   against it be, and the same hereby is, DENIED.

16             Plaintiff is granted twenty days from the date of this

17   Order to file an amended complaint if he can do so consistent

18   with this Order.

19   Dated:  October 3, 2024

     WILLIAM B. SHUBB
20   UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

                                    10